## DRESSEL v. THE STATE OF INDIANA.

[No. 21,638.     Filed December 8, 1910.]

1. INTOXICATING LIQUORS.—*License.*—*Internal Revenue Tax.*—The payment of a retailer's internal revenue tax for the sale of liquor gives no right to sell liquor within a state.     p. 754.

2. INTOXICATING LIQUORS.—*"Blind Tigers."*—*Evidence.*—Evidence that a wholesaler in a "dry" county maintained a regular bar up stairs, dispensing drinks, and delivering liquor in small quantities to consumers there and at their homes, and having also an internal revenue retailer's license, sufficiently shows that he was operating a "blind tiger."     p. 755.

From Monroe Circuit Court; *James B. Wilson,* Judge.

Prosecution by The State of Indiana against John Dressel. From a judgment of conviction, defendant appeals. *Affirmed.*

*Henley & East* and *Robert G. Miller,* for appellant.

*James Bingham,* Attorney-General, *A. G. Cavins, E. M. White* and *W. H. Thompson,* for the State.

HADLEY, J.—Appellant was found guilty of keeping a place where intoxicating liquors were sold, bartered or given away, in violation of §8351 Burns 1908, Acts 1907 p. 689.

Numerous assignments of error are made, but the only one presented questions the sufficiency of the evidence to support the conviction. It appears from the bill of exceptions, that in December, 1906, at Bloomington, Indiana, appellant established a wholesale liquor business, and continued to carry on said business to the time of the grievances alleged against him. Prior to December, 1908, he had for a number

Dressel *v.* State—174 Ind. 752.

of years conducted a retail liquor business (a saloon) on the same premises, and with the same furniture and fixtures, but the screen, bar and other appurtenances thereto had been moved from the north to the south side of the room after the expiration of the retail license. On the day laid in the indictment, to wit, March 27, 1909, the sheriff and a posse with a search warrant raided appellant's premises, and found in an upstairs room a regularly equipped bar, that is to say, a sideboard against the south wall, supporting a mirror and partially filled bottles, a counter in front of the sideboard, at the west end of which was a cigar case containing broken boxes of cigars, at the east end an ice-box, within which, under the counter, were some bottled beer and pop in a bucket of water, also bottled whisky and wine, twenty-nine empty beer bottles, some whisky and beer glasses and a corkscrew. In a small cement storage room, connected with the building by an enclosed passage-way, two or three half barrels of whisky, four or five cases of beer, and a pump designed for taking whisky from the barrel, were found. In another room next to the barroom were a number of cases of empty beer bottles. When the upstairs barroom was entered by the posse, one Tucker, who had been in the employ of appellant four years as his assistant in the saloon and wholesaling business, was standing behind the cigar case, and two or three men were loitering in the room. In the adjoining room four or five men were seated at a table playing cards. There were poker chips on the table, and two beer bottles, each containing but a small quantity of beer. In the cement storehouse there were found tacked up over the door two internal revenue receipts, one acknowledging the payment of "$25 for special tax on business of Retail Liquor Dealer" for one year ending June, 1909, and another acknowledging the receipt of "$100 for special tax on the business of Wholesale Liquor Dealer" for one year ending June, 1909.

Vol. 174—48

One witness testified, in substance, that he had recently, before the date fixed in the indictment, called up appellant's place of business by telephone and inquired of the person answering the call if he would deliver at witness's house a case of pint bottled beer, and was answered in the affirmative. In a few hours a case of beer of the kind ordered was delivered at his house. A few days later the witness called at appellant's place of business, and in the upstairs room described found Tucker standing behind the cigar case. There were four or five other men idling in the room. The witness announced to Tucker that he had called to pay for the beer, and at the same time presented him a twenty-dollar bill. Witness, at the same time, extended a general invitation to the other men in the room to have a drink with him. Four or five of them stepped up to the counter. Tucker placed some glasses and a bottle of whisky on the bar, and they each had a drink, but witness was not certain whether each drinker poured his own drink, or whether Tucker poured it all, or part. After the drinking, Tucker gave witness his change, keeping out of the bill $3.25 as full payment for the case of beer and the drinks. How much, if anything, was charged for the drinks witness was unable to state. Tucker afterward accounted to appellant for the $3.25.

It is not claimed that appellant had a retailer's license, or any right to sell, barter or give away liquor in a less quantity than five gallons at a time, other than that conveyed by the receipt executed by the agent of the federal government for the federal tax on the retailing business, and this was no right at all. Such a receipt conveyed no right to retail liquors, further than that when a citizen has been once licensed to sell at retail, by some state law, he cannot exercise the right until he has paid such tax to the government. The payment of such tax affords no protection whatever to one who has not been authorized to sell under the laws of the State.

Appellant insists that the foregoing evidence did not warrant the jury in finding him guilty of keeping a place where liquors are sold, bartered or given away in violation of law. We think otherwise. The gravamen of the offense denounced is the *keeping* of a place where liquors are unlawfully disposed of. The naked fact of being a wholesaler is no defense. The wholesaler has his limits, beyond which he cannot go without suffering the same penalty as he who is unable to show any legal authority to traffic in liquors. He may in good faith conduct a wholesale business, but in doing it, if at the same time and place he indulges, or knowingly suffers another in his behalf to sell, barter, or give away intoxicating liquors, to consumers in any quantity, he comes within the condemnation of the statute. *Skelton* v. *State* (1909), 173 Ind. 462. With respect to sales to consumers in any quantity, his being a wholesaler is no better shield than being a grocer, if it is shown that he keeps the place for illicit disposition as well as wholesaling. Besides, the jury had the right to find, if it thought the evidence proved it, that appellant was not in fact a wholesaler, and was using his government tax receipt, as a wholesaler, as a cloak to cover his transaction as an illicit retailer.

It is urged that the wholesaler's tax receipt, supported by the positive testimony of appellant that he was doing a wholesale and not a retail business, under the state of the evidence, should have been accepted by the jury as conclusive of the fact. If the jury had had before it nothing but circumstantial evidence as against the positive testimony of appellant and the tax receipt, we would be unable to say the jury was not justified in finding appellant guilty as charged. *Cotner* v. *State* (1909), 173 Ind. 168. The significance—in a wholesale house—of a fully equipped bar, containing partly filled bottles of whisky and wine, bottled beer and pop in a bucket of water, whisky and beer glasses, a corkscrew, an ice-box, cigars on sale, card tables and players,

recently emptied beer bottles, with a total stock in trade of five cases of beer, and two or three half barrels of whisky, was for the jury to determine, and when to these facts are added the testimony of the witness Gentry, that at one time he ordered a case of beer from the place by telephone, and at another time bought four or five single drinks of whisky at appellant's bar, the case is placed in a light where we feel no hesitancy in affirming the judgment.

Judgment affirmed.